# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **CESYA WILBURN** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **EXPERIAN INFORMATION** | ) |
| **SOLUTIONS INC.,** | )    **JURY TRIAL DEMANDED** |
| | ) |
| **TRANS UNION LLC.,** | ) |
| | ) |
| **EQUIFAX INFORMATION** | ) |
| **SERVICES LLC.,** | ) |
| | ) |
| and | ) |
| | ) |
| **MOUNTAIN AMERICA CREDIT** | ) |
| **UNION.** | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Cesya Wilburn ("Plaintiff"), and for her Complaint against the Defendants Experian Information Solutions Inc.("Experian"), Trans Union LLC, ("Tran Union")., Equifax Information Services LLC ("Equifax"), and Mountain America Credit Union ("MACU"), Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, and costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.

1

("FCRA"), which relates to the proper dissemination and use of consumer credit and other financial information.

## JURISDICTION & VENUE

2. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681 and 28 U.S.C. § 1331.

3. Venue in this District is proper in that Plaintiff resides here, Defendants transact business here and the conduct complained of occurred here.

## PARTIES

4. Plaintiff Cesya Wilburn is a natural person that resides in the State of Missouri. She is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

5. Mountain America Credit Union ("MACU") is a corporation that regularly transacts business in Missouri.

6. MACU is a furnisher of information as contemplated by FCRA § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

7. Experian Information Solutions Inc ("Experian") is a corporation, registered to do business in Missouri as a foreign corporation that regularly engages in business in the same.

8. Experian is a nationwide credit reporting agency whose principle purpose is the composition and issuance of consumer reports. Experian is a consumer reporting agency for the purposes of 15 U.S.C. § 1681 et seq.

9. Trans Union LLC ("Trans Union") is an entity, registered to do business in Missouri as a foreign corporation that regularly engages in business in the same.

10. Trans Union is a nationwide credit reporting agency whose principle purpose is the composition and issuance of consumer reports. Trans Union is a consumer reporting agency for the purposes of 15 U.S.C. § 1681 et seq.

11. Equifax Information Services LLC ("Equifax") is an entity, registered to do business in Missouri as a foreign corporation that regularly engages in business in the same.

12. Equifax is a nationwide credit reporting agency whose principle purpose is the composition and issuance of consumer reports. Equifax is a consumer reporting agency for purposes of 15 U.S.C. § 1681 et seq.

13. CRA stands for a credit reporting agency whose principle purpose is the composition and issuance of consumer reports for the purposes of 15 U.S.C. § 1681 et seq.

## FACTS COMMON TO ALL CLAIMS

14. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

15. On or about August of 2016, Plaintiff obtained a joint credit account ("Account") through MACU with her former husband.

16. Later in 2016, Plaintiff and her former husband fell behind on the Account.

17. Upon information and belief, MACU wrote off the Account as a charge-off.

18. Upon information and belief, MACU retained the services of a debt collector called Knight Adjustment Bureau ("KAB") in July of 2017 for the purposes of collecting the Account.

19. On or about February of 2019, Plaintiff filed for divorce against her former husband.

20. This divorce was finalized in September of 2019.

21. Following her divorce, Plaintiff began, more closely, to monitor her creditworthiness in hopes of attaining mortgage financing.

22. On or about January 3, 2020, Plaintiff obtained a copy of her consumer report ("January 3rd Report"), 2020 consumer report.

23. On the January 3rd Report, Plaintiff noticed that MACU was furnishing a tradeline for the Account on all three of the major CRAs: Equifax, Trans Union, and Experian ("MACU Tradeline")

24. On that same January 3rd Report, Plaintiff also noticed that that KAB was also furnishing what she suspected to be a tradeline for the Account on all three of the major CRAs: Equifax, Trans Union, and Experian ("KAB Tradeline").

25. Plaintiff noticed that the KAB Tradeline had MACU listed as the original creditor, causing Plaintiff to believe that the KAB Tradeline and the MACU Tradeline both involved the Account.

26. Both the KAB Tradeline and the MACU Tradeline showed outstanding balances on Equifax, Experian, and Trans Union of Plaintiff's January 3rd Report.

27. Plaintiff had a strong suspicion that both the KAB Tradeline and the MACU Tradeline were associated with the same Account.

28. That same day on or about January 3, 2020, Counsel for Plaintiff sent requests to validate to KAB and MACU respectively.

29. On or about February 4th, MACU sent Counsel for Plaintiff documentation ("Account Documentation") showing that KAB was indeed collecting on the Account on behalf of MACU.

30. On or about March 13, 2020, Plaintiff obtained a copy of her consumer report ("March 13th Report"), consumer report and again noticed both the MACU Tradeline and KAB Tradeline showing balances. Now it was clear that both MACU and KAB were furnishing balances for the same underlying Account on Plaintiff's consumer reports.

31. MACU, by furnishing a derogatory balance for the Account while KAB was also furnishing a derogatory balance for that same Account, made it appear that Plaintiff owed significantly more money or two debts rather than one. This inaccurate reporting of the Account on Plaintiff's Equifax, Experian, and Trans Union consumer reports has directly impacted Plaintiff's creditworthiness in a negative fashion.

32. Plaintiff was distressed by the inaccurate and harmful data impacting her Trans Union, Experian, and Equifax consumer reports.

33. The way Plaintiff saw it, this inaccurate and harmful reporting related to the Account was inhibiting her ability, as a single-mother, to move on from her divorce and provide a better life to her children.

34. On or about March 18, 2020, Plaintiff sent letters to Equifax, Experian, and Trans Union to dispute the accuracy of the reporting of the KAB and MACU Tradelines as they were reported on the March 13th Report.

35. Pursuant to 15 U.S.C. 1681i of the FCRA, Equifax, Experian, and Trans Union were then obligated to investigate the KAB Tradeline and MACU Tradeline.

5

36. As part of Equifax, Experian, and Trans Unions investigations for the March 18, 2020 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax, Experian, and Trans Union forwarded copies of Plaintiff's March 18th, 2020 dispute to MACU and KAB.

37. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, MACU was then obligated to reinvestigate the disputed information on Plaintiff's consumer report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

38. Plaintiff received no responses to her March 18, 2020 dispute from Equifax, Experian, or Trans Union.

39. Unsure as to the outcomes of her March 18, 2020 disputes, Plaintiff obtained another copy of her consumer report on April 22, 2020 ("April 22nd Report").

40. Plaintiff was disheartened to see that the inaccuracy as to the duplicate balance appearing on the MACU Tradeline, remained on Plaintiff's Equifax, Experian, and Trans Union consumer reports.

41. That same day on April 22, 2020, Plaintiff sent letters to Equifax, Experian, and Trans Union to dispute the accuracy of the reporting of the KAB and MACU Tradelines as they were reported on the April 22nd Report.

42. Included in these April 22, 2020 letters sent to Equifax, Experian, and Trans Union, were copies of the April 22nd Report, which showed the inaccurate nature of how the Account was reflected on Plaintiff's consumer reports.

43. Pursuant to 15 U.S.C. 1681i of the FCRA, Equifax, Experian, and Trans Union were then obligated to investigate the KAB Tradeline and MACU Tradeline.

44. As part of Equifax, Experian, and Trans Unions investigations for the April 22, 2020 dispute and pursuant to 15. U.S.C. 1681i(a)(2) of the FCRA, Equifax, Experian, and Trans Union forwarded copies of Plaintiff's April 22, 2020 disputes and the April 22 Reports to MACU and KAB.

45. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, MACU was then obligated to reinvestigate the disputed information on Plaintiff's consumer report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

46. Plaintiff received no responses to her April 22, 2020 dispute from Equifax, Experian, and Trans Union.

47. Unsure as to the outcomes of her April 22, 2020 disputes, Plaintiff obtained another copy of her consumer report on May 27, 2020 ("May 27th Report").

48. Once again, there was no change to the duplicate balance appearing on the MACU Tradeline, on Plaintiff's Equifax, Experian, and Trans Union consumer reports.

49. On July 6, 2020, Plaintiff sent letters to Equifax, Experian, and Trans Union to dispute the accuracy of the reporting of the MACU Tradeline as it was reported on the May 27th Report.

50. Included in these July 6, 2020 letters sent to Equifax, Experian, and Trans Union, were copies of the May 27th Report, which showed the inaccurate nature of how the Account was reflected on Plaintiff's consumer reports.

7

51. Also included in these July 6, 2020 letters sent to Equifax, Experian, and Trans Union, were copies of the Account Documentation.

52. Pursuant to 15 U.S.C. 1681i of the FCRA, Equifax, Experian, and Trans Union were then obligated to investigate the MACU Tradeline.

53. As part of Equifax, Experian, and Trans Unions investigations for the July 6, 2020 dispute and pursuant to 15. U.S.C. 1681i (a)(2) of the FCRA, Equifax, Experian, and Trans Union forwarded copies of Plaintiff's July 6, 2020 dispute, the May 27th Report, and the Account Documentation to MACU.

54. Pursuant to 15 U.S.C. 1681s-2(b) of the FCRA, MACU was then obligated to reinvestigate the disputed information on Plaintiff's consumer report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

55. Once again, Plaintiff received no responses from Equifax, Experian, or Trans Union.

56. On or about August 10, 2020, ("August 10th Report") Plaintiff obtained a copy of her consumer report.

57. On her August 10th, Report, Plaintiff saw that Equifax, Experian, and Trans Union were still continuing to report both the MACU Tradeline and KAB Tradeline with outstanding balances on Plaintiff's consumer report.

58. By this point, Plaintiff felt that the Equifax, Experian, and Trans Union and MACU could not be trusted to fix the harmful and derogatory reporting relating to the Account without resorting to litigation.

8

# FIRST CLAIM FOR RELIEF
## (Negligent and Willful Violations of 15 US.C. § 1681*i* by Experian)

59. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

60. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

61. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

62. If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

### Experian's Reasonable Reinvestigation Violations

63. By letters dated March 18, 2020, April 22, 2020, and July 6, 2020 and sent to Experian, Plaintiff disputed the inaccurate and derogatory MACU Tradeline reporting by Experian.

9

64. Upon information and belief, Experian conducted an inadequate investigation of the MACU Tradeline following each dispute.

65. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

66. As a direct and proximate result of Experian's disregard for Plaintiff's dispute and its obligations under the FCRA as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as herself.

67. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

68. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this ***First Claim for Relief*** in her favor and against Experian's, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

**SECOND CLAIM FOR RELIEF**
**(Negligent and Willful Violations of 15 US.C. § 1681*i* by Trans Union)**

69. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

70. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

71. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

72. If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the

11

reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

## Trans Union's Reasonable Reinvestigation Violations

73. By letters dated March 18, 2020, April 22, 2020, and July 6, 2020 and sent to Trans Union, Plaintiff disputed the inaccurate and derogatory MACU Tradeline reporting by Trans Union.

74. Upon information and belief, Trans Union conducted an inadequate investigation of the MACU Tradeline following each dispute.

75. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

76. As a direct and proximate result of Trans Union's disregard for Plaintiff's dispute and its obligations under the FCRA as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as herself.

77. As a direct and proximate result of Trans Union's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

78. Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this *Second Claim for Relief* in her favor and against Trans Union's, and for the following relief:

(f) Actual damages sustained;

(g) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(h) Punitive damages in an amount to be determined by the jury;

(i) Reasonable attorneys' fees and costs; and

(j) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## THIRD CLAIM FOR RELIEF
**(Negligent and Willful Violations of 15 US.C. § 1681*i* by Equifax)**

79. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

80. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

81. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

82. If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

**Equifax's Reasonable Reinvestigation Violations**

83. By letters dated March 18, 2020, April 22, 2020, and July 6, 2020 and sent to Equifax, Plaintiff disputed the inaccurate and derogatory MACU Tradeline reporting by Equifax.

84. Upon information and belief, Equifax conducted an inadequate investigation of the MACU Tradeline following each dispute.

85. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

86. As a direct and proximate result of Equifax's disregard for Plaintiff's dispute and its obligations under the FCRA as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as herself.

87. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

88. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this ***Third Claim for Relief*** in her favor and against Equifax's, and for the following relief:

(k) Actual damages sustained;

(l) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(m) Punitive damages in an amount to be determined by the jury;

(n) Reasonable attorneys' fees and costs; and

(o) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## FOURTH CLAIM FOR RELIEF

**(Negligent and Willful Violations of 15 U.S.C. § 1681s-2 Against MACU)**

89. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

90. MACU is a "furnisher" as that term is used in 15 U.S.C. § 1681*s-2*.

91. Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681*s-2*(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

92. On at least three occasions, March 18, 2020, April 22, 2020, and July 6, 2020, Plaintiff contacted Equifax, Experian, and Trans Union specifically to dispute the accuracy of how the MACU Tradeline was being reported.

93. Plaintiff specifically advised Equifax, Experian, and Trans Union on each occasion that mistakes had been made, and requested the false information be corrected accordingly.

94. Upon information and belief, and pursuant to 15 U.S.C. § 1681*i*(a)(2), MACU received notification of these disputes from Equifax, Trans Union, and Experian and sent notice to Equifax, Trans Union, and Experian wrongly verifying the MACU Tradeline as accurate.

95. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, MACU negligently and/or willfully violated § 1681*s-2*(b)(1) with respect to each dispute lodged by Plaintiff.

96. As a direct and proximate result of MACU's willful and/or negligent refusal

16

to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681*o*.

97. MACU's indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against MACU pursuant to 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE** Plaintiff prays for judgment on this ***Fourth Claim for Relief*** in her favor and against MACU, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

**CREDIT LAW CENTER**

Date: September 29, 2020

/s/*Anthony Hernandez*
Anthony Hernandez
MO # 69129
4041 N.E. Lakewood Way, Ste. 200
Lee's Summit, MO 64064
Tel:  (816) 282-0422
Fax:  (855) 523-6884
anthonyh@creditlawcenter.com

*Attorney for Plaintiff*